UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| Lavell C. Robinson,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>TCP Global Corporation,<br><br>　　　　　Defendant. | Case No. 2:24-cv-00853-DJA<br><br>**Order** |

This is an employment discrimination case arising out of *pro se* Plaintiff Lavell Robinson's employment with Defendant TCP Global Corporation. Robinson sues TCP for damages, alleging claims for wrongful termination, disability discrimination, failure to accommodate, bad faith, and failure to engage in the interactive process. (ECF No. 24). TCP moves to dismiss Robinson's complaint with prejudice under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. (ECF No. 25). Robinson moves "to contend the joint employer doctrine under the Fair Labor Standards Act ("FLSA") and the Nevada Rules of Civil Procedure." (ECF No. 30). Because the Court finds that Robinson has not stated a claim upon which relief can be granted, but that Robinson could potentially state certain of his claims if he amended, it grants TCP's motion to dismiss in part and denies it in part. Because Robinson does not bring a FLSA claim and the Court has dismissed Robinson's complaint, it denies Robinson's motion "to contend the joint employer doctrine" as moot.

**Background**

Robinson began working at TCP as a temporary employee through a staffing agency called Pridestaff, Inc. (ECF No. 24 at 2). Robinson alleges that TCP terminated him on January 16, 2023, "for requesting a day off to assess his disability" and "for calling off work twice." (*Id.* at 2, 8). Robinson claims that TCP terminated him because of his disability, which he describes as a debilitating sinus disease and a memory impairment due to toxic mold exposure. (*Id.* at 3-4).

Robinson asserts that he requested the accommodation of "speaking to a workers comp adjuster," which, from Robinson's texts with Pridestaff, appears to be the reason he requested a day off of work from TCP on January 16, 2023. (*Id.*). However, Robinson does not state that TCP declined to give him the day off, only that he was terminated after requesting that day off. Robinson asserts that he was a qualified individual able to perform the functions of his job—although he does not explain what his job was specifically—with the accommodation he requested. (*Id.* at 5). Robinson claims that, after TCP fired him, TCP manipulated his timecards and that Pridestaff used the manipulated timecards to contest his unemployment insurance claim, although it appears that Robinson's claim was ultimately successful. (*Id.* at 6). He alleges that TCP deleted text messages and that it "broke down in engaging in the interactive process." (*Id.* at 7).

Much of Robinson's complaint is based on text messages he attaches, both with TCP supervisor Antonio (Tony) Garcia and with a contact named "Pridestaffing." Robinson's texts with Garcia show him requesting days off on December 13, 2022,[1] January 9, 2023, and January 16, 2023, presumably because of his disability. (*Id.* at 44, 53, 54).

| December 13, 2022 | |
|---|---|
| Robinson | Aye I'm going through something's mentally rn don't feel like I'm up to do anything today I'ma call off with pride staffing n let them know but this is one call off outta three months so hopefully you all could understand if not it is what it is it's probably that mold exposure I had at the hotel but if anything I'll see you all tomorrow |
| Garcia | Good morning Lavell, just so we're on the same page this is an unexcused absence. Make sure you contact pride staff and let them know what's going on. Hope you get better see you soon. |

| January 9, 2023 | |
|---|---|
| Robinson | Tony won't be in today my head is throbbing n hurts like hell I'll be there Wednesday I will contact pride staffing |
| Garcia | Okay thanks for telling me, see you Wednesday |

---

[1] Robinson does not specifically state that these texts took place in 2022, nor do the texts themselves provide the year. However, using the context of his complaint, it appears that these texts took place 2022. In any amendment, Robinson should specify the date of these texts in the body of his complaint.

| | January 16, 2023 |
|---|---|
| Robinson | Hey won't be in today I got hella erand [sic] I gotta run n won't be able to do it after work |
| Garcia | Okay |

Other texts with Garcia show Robinson requesting time off to go to a doctor appointment and Garcia approving that request.  (*Id.* at 51-53).

| | January 5, 2023 |
|---|---|
| Robinson | I gotta set up a appointment with a nose specialist prolly next week if one is available I'ma lyk after lunch Toma [sic] |
| Garcia | Okay sounds good, thanks for the heads up |
| Robinson | I got a[n] appointment on Tuesday at 10:30am<br><br>With my work comp dr |
| Garcia | Are you going to need the whole day off ? If possible can you schedule future appointments for evening so you don't miss any time ?<br><br>But yeah you're good to go I'll get you set up for Tuesday. |
| Robinson | Yea I never did this it was the Dr office they required to see me soon and frequently because of the request to see the specialist had to be approved by the workers compensation insurance company<br><br>N cool<br><br>So they wanna make sure I'm breathing |
| Garcia | Yeah you're good to go just a heads up you need to contact pride staff and let them know that you're going to the doctors |
| Robinson | I know they called me today |
| Garcia | Okay sounds good, if possible bring a doctors note or something that can show that you went to see a doctor for your records |
| Robinson | Okay |

///

///

///

Robinson also attaches texts he had with Pridestaff regarding his January 5th doctor's appointment, along with his January 9th, and January 16th absences. (*Id.* at 37).

| January 5, 2023 | |
|---|---|
| Robinson | Just letting you now I'm am at my drs appointment today n I won't be at work till tomorrow I already signed my paperwork at tcp |

| January 9, 2023 | |
|---|---|
| Robinson | Won't be at tcp today my head is in throbbing pain from my chronic sinusitis I'll be in Wednesday |

| January 16, 2023 | |
|---|---|
| Robinson | Won't be at tcp today I have errands I gotta run n hella phone calls I have to make my workers comp I need to get in touch with the insurance company to get them to approve me to see a ENT Dr and I keep missing they call at work this is important because I have a chronic condition that I need to make sure it is kept up with it can impact my brain in many different ways I hope you can understand |
| Pridestaff | I definitely understand Lavell. I'm sorry you're going through all of this. Unfortunately, I can't guarantee anything. Riley notices excessive absences, and considering it's Riley's business, he will have the final say. I appreciate you letting me know. |
| Pridestaff | Lavell do not report to work tomorrow. Please give me a call as soon as possible. |

**Legal Standard**

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) will only be granted if the complaint fails to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). On a motion to dismiss, "we presum[e] that general allegations embrace those specific facts that are necessary to support the claim." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990)) (alteration in original). Moreover, "[a]ll allegations of material fact in the complaint are taken as true and construed in the light most favorable to the plaintiff." *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1403 (9th Cir. 1996) (citation omitted). Although courts generally assume the facts alleged are

true, courts do not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). Accordingly, "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *In re Stac Elecs.*, 89 F.3d at 1403 (citation omitted) (cleaned up). If a court grants a motion to dismiss for failure to state a claim, leave to amend should be granted unless it is clear that the deficiencies of the complaint cannot be cured by amendment. *DeSoto v. Yellow Freight Systems, Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).

Review on a motion under Fed. R. Civ. P. 12(b)(6) is normally limited to the complaint itself. *See Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001). If the district court relies on materials outside the pleadings in making its ruling, it must treat the motion to dismiss as one for summary judgment and give the non-moving party an opportunity to respond. Fed. R. Civ. P. 12(d); *see United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003). "A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *Ritchie*, 342 F.3d at 908. The court may consider documents physically attached to the complaint, or documents that are not physically attached if their "authenticity is not contested" and "the plaintiff's complaint necessarily relies on them." *Lee*, 250 F.3d at 688 (citation, internal quotations, and ellipsis omitted). A court may also treat certain documents as incorporated by reference into the plaintiff's complaint if the complaint "refers extensively to the document or the document forms the basis of the plaintiff's claim." *Ritchie*, 342 F.3d at 908.

**Discussion**

**I.      Standard of review.**

As a preliminary matter, the Court notes that Robinson has attached documents to the complaint which both Robinson and TCP have asked the Court to consider. The Court finds that it can consider these documents in deciding TCP's motion to dismiss without converting the motion into one for summary judgment because the documents are attached to the complaint, TCP does not dispute their authenticity, and Robinson's complaint necessarily relies on them.

**II.     Robinson's claims.**

   ***A.     Wrongful discharge.***

The Court grants TCP's motion to dismiss Robinson's wrongful discharge claim because his claim is based on disability discrimination, for which Robinson already has an adequate, comprehensive, statutory remedy. In Nevada, an employer may generally terminate an at-will employee for any reason without being subject to liability for wrongful discharge. *Smith v. Cladianos*, 752 P.2d 233, 234 (Nev. 1988). However, Nevada recognizes a narrow exception to this rule where an employer discharges an employee for a reason which violates a strong public policy of the state. *D'Angelo v. Gardner*, 819 P.2d 206, 216 (Nev. 1991). To prevail on a wrongful discharge claim in Nevada, a plaintiff must establish that she: (1) was terminated by her employer for reasons that "violate[] strong and compelling public policy"; and (2) is without "an adequate, comprehensive, statutory remedy." *See Ozawa v. Vision Airlines, Inc.*, 216 P.3d 788, 791 (Nev. 2009) (quoting *Sands Regent v. Valgardson*, 777 P.2d 898, 900 (1989) and *D'Angelo*, 819 P.2d at 217-18).

While the Nevada Supreme Court has carved out exceptions to the at-will doctrine, the Court has repeatedly counseled that such exceptions are "severely limited" to "rare and exceptional cases." *See Valgardson*, 777 P.2d at 900; *Hansen v. Harrah's*, 675 P.2d 394, 396 (Nev. 1984) ("the at-will employment rule is subject to limited exceptions ...."); *Cladianos*, 752 P.2d at 235 ("We severely restricted the tort remedy ... to those rare and exceptional instances where the employer's conduct goes well beyond the bounds of ordinary breach of contract liability."); *Bigelow v. Bullard*, 901 P.2d 630, 632 (Nev. 1995) ("This apparent exception to the at-will rule is a narrow one."). The Nevada Supreme Court has recognized limited exceptions to the at-will doctrine, including the following: (1) terminating an employee in retaliation for filing a worker's compensation claim; (2) terminating an employee for refusing to work under unreasonably dangerous conditions; (3) terminating an employee for refusing to engage in conduct that the employee, in good faith, reasonably believed was illegal; and (4) terminating an employee for whistleblowing. *Hansen*, 675 P.2d at 396-97; *Bigelow*, 901 P.2d at 634; *D'Angelo*, 819 P.2d at 216; *Allum v. Valley Bank*, 970 P.2d 1062, 1068 (Nev. 1998); *Wiltsie v. Baby Grand*

*Corp.*, 774 P.2d 432, 433 (Nev. 1989); *Clark v. Columbia/HCA Info. Servs., Inc.*, 25 P.3d 215, 221 (Nev. 2001).

Beyond the recognized exceptions, the Nevada Supreme Court has routinely declined to adopt new exceptions, thus reinforcing the limited range of public policy tortious discharge claims. *See, e.g.*, *Brown v. Eddie World, Inc.*, 348 P.3d 1002, 1004 (Nev. 2015); *Ainsworth v. Newmont Min. Corp.*, 381 P.3d 588, 2012 WL 987222, at *3 (Nev. Mar. 20, 2012) (unpublished). The Nevada Supreme Court has declined to recognize a public policy exception to the employment at-will doctrine based on race discrimination with respect to small employers. *Chavez v. Sievers*, 43 P.3d 1022, 1028 (Nev. 2002). It has also declined to recognize an exception to the at-will doctrine for age discrimination. *Valgardson*, 777 P.2d at 900. Similarly, federal courts interpreting Nevada law have narrowly construed Nevada Supreme Court precedent on tortious discharge and have expressed reluctance to predict new exceptions to the at-will doctrine. *See, e.g.*, *Law v. Kinross Gold U.S.A., Inc.*, 651 F. App'x 645, 649 (9th Cir. 2016); *Kersey v. Costco Wholesale Corp.*, 210 F. App'x 561, 562 (9th Cir. 2006); *Finn v. City of Boulder City*, No. 2:14-cv-01835-JAD-GWF, 2018 WL 473001, at *8 (D. Nev. Jan. 17, 2018); *Tschirhart v. Reg'l Transp. Comm'n of Washoe Cty.*, No. 3:11-cv-00281-RCJ-WGC, 2012 WL 1684596, at *5 (D. Nev. May 11, 2012).

The Court grants TCP's motion to dismiss Robinson's wrongful discharge claim because it does not arise under one of the rare and exceptional recognized public policy exceptions to the at-will doctrine. Robinson's wrongful discharge claim is premised on the theory that TCP terminated him because of his disability. This theory does not fit under any exception to the at-will employment rule that the Nevada Supreme Court has recognized. Robinson does not allege that he was fired for filing a worker's compensation claim,[2] that he refused to work in dangerous conditions or to engage in illegal conduct, or that he was a whistleblower.

---

[2] Robinson asserts that, part of his requested accommodation was taking time off to speak to a workers' compensation adjuster. (ECF No. 24 at 3). However, Robinson does not allege that TCP retaliated against him for filing a worker's compensation claim. So, the Court does not construe Robinson's complaint as falling into this recognized exception to the at-will doctrine.

Instead, Robinson's disability discrimination claim is more analogous to the claims in *Chavez* and *Valgardson*, where the employees brought race and age discrimination claims, respectively. The Nevada Supreme Court declined to recognize a public policy exception to the at-will doctrine in both instances, so the Court is reluctant to predict that the Nevada Supreme Court would deviate from those holdings here. This is particularly true because both Nevada and federal law provide comprehensive statutory remedies for disability discrimination. *See* Americans with Disabilities Act ("ADA") 42 U.S.C. § 12181, *et seq.*; *see* Nev. Rev. Stat. § 613.310, *et seq*. And Robinson gives the Court no reason to predict that the Nevada Supreme Court would find that his claim for disability discrimination constitutes an exception to the at-will doctrine. The Court thus grants TCP's motion to dismiss Robinson's wrongful discharge claim. Because it is possible that Robinson could allege a public policy exception to the at-will doctrine, the Court dismisses this claim without prejudice and with leave to amend.

### B.   *Disability discrimination.*

The Court grants TCP's motion to dismiss Robinson's disability discrimination claim because Robinson does not allege facts sufficient to show that he was terminated because of his disability and the text messages he relies on contradict his conclusory allegations. Robinson brings his disability discrimination claim under the American's with Disabilities Act ("ADA").[3] (ECF No. 24 at 4). To establish a prima facie case of disability discrimination under the ADA, a plaintiff must show the following: (1) he is a disabled person within the meaning of the statute; (2) he is a qualified individual with a disability; and (3) he suffered an adverse employment action because of his disability. *Mayo v. PCC Structurals, Inc.*, 795 F.3d 941, 944 (9th Cir. 2015). The Court is "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint." *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295-96 (9th Cir. 1998).

---

[3] Robinson does not reference Nevada's statutory equivalent to the ADA, Nev. Rev. Stat. § 613.310, *et seq.*. However, even if he did, the Court's analysis would remain the same. *See Littlefield v. Nevada, ex. rel. Dep't of Public Safety*, 195 F.Supp.3d 1147, 1152 (D. Nev. 2016) ("Nevada courts apply the ADA approach to…state law claims").

TCP argues that the Court should dismiss Robinson's disability discrimination claim because the text messages that Robinson attaches to his complaint contradicts his conclusory claim that TCP terminated him because of his disability.  (ECF No. 25 at 7-8).  TCP points out that the records attached to Robinson's complaint demonstrate that he was aware that TCP had a policy that three unexcused absences would result in termination.  (*Id.*) (citing ECF No. 24 at 23, 24, 32, 33).  TCP also points out that the texts show that Garcia—a TCP supervisor—approved Robinson's request for time off to see an ear, nose, and throat specialist in January of 2023.  (*Id.*) (citing ECF No. 24 at 29).  TCP claims that the texts Robinson attaches contradict Robinson's allegation that TCP terminated him because of his disability because they show that TCP terminated Robinson for his three unexcused absences on December 13, 2022, January 9, 2023, and January 16, 2023.  (*Id.* at 8-9).

Here, the Court does not necessarily find that the texts demonstrate TCP reasoning for firing Robinson, but it does find that Robinson's texts contradict his conclusory claim that TCP fired Robinson because of his disability.  Liberally construing Robinson's complaint, he sufficiently alleges the first and second elements of a prima facie case of disability discrimination.  He alleges that he is disabled due to "a debilitating Sinus Disease and a Memory Impairment due [t]o Toxic Mold Exposure and the allergic reaction to the [t]oxicity of the mold."  (ECF No. 24 at 4).  And he alleges that he was qualified to perform the physical requirements of his job with his requested accommodation of speaking with a worker's compensation adjuster.  (*Id.* at 4-5).

However, Robinson's allegations do not show that TCP terminated him because of his disability.  Robinson alleges in conclusory fashion that he "was terminated because of his disability," and that "Defendant[] h[as] terminated Plaintiff because of his requested accommodation of speaking to a workers comp adjuster."  (*Id.* at 3-4).  But, importantly, Robinson does not allege or point to any communications that would show that he ever informed TCP of his disability or his requested accommodations.  Robinson does point to some texts with Garcia in which he requested a day off for an appointment with a specialist, which request Garcia approved.  (*Id.* at 51-52).  But Robinson does not refer to his doctor's appointment as being related to a disability or part of an accommodation in those texts.  And while he alleges that he

"informed Pridestaff, Inc. of his disability," Robinson has not sued Pridestaff. Additionally, the text Robinson sent to Garcia on January 16, 2023, that allegedly resulted in his termination does not reference his disability at all. Instead, Robinson simply stated he had "hella er[r]and [he had to] run…" (*Id.* at 54). While his text to Pridestaff on that same day provided more detail, again, Robinson is not alleging that Pridestaff terminated him because of his disability. Ultimately, Robinson's allegation that TCP terminated him because of his disability is conclusory and not supported by the documents to which he refers as supporting his claim. The Court thus grants TCP's motion to dismiss his claim. Because Robinson could possibly allege facts supporting a claim for disability discrimination, the Court dismisses this claim without prejudice and with leave to amend.

### C. *Failure to accommodate and failure to engage in the interactive process.*

The Court grants TCP's motion to dismiss Robinson's claims for failure to accommodate and failure to engage in the interactive process because they are not stand-alone claims and because Robinson has not sufficiently alleged facts to support them. "[O]nce an employee requests an accommodation…the employer must engage in an interactive process with the employee to determine the appropriate reasonable accommodation." *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1089 (9th Cir. 2002). There is no stand-alone claim for an employer's failure to engage in the interactive process. *Snapp v. United Transportation Union*, 889 F.3d 1088, 1095 (9th Cir. 2018). "Rather, discrimination results from denying an available and reasonable accommodation." *Id.*

Robinson's failure-to-accommodate and failure-to-engage-in-the-interactive-process claims are essentially disability discrimination claims, just using a different theory. The Court thus liberally construes them as additional disability discrimination claims. But these claims fail because Robinson's allegations are too conclusory to state a claim upon which relief can be granted and the documents he attaches do not support his claims.

Regarding Robinson's failure-to-accommodate claim, Robinson alleges that he requested "accommodation of speaking to a worker's comp adjuster." (ECF No. 24 at 4). But, importantly, he does not explain how he requested this accommodation, when, from whom, or what the

outcome of his request was. Instead, he refers to his text messages with Garcia. But those texts do not demonstrate Robinson specifically requesting an accommodation. Instead, they show Robinson requesting a day off to see a doctor, a request that Garcia granted. And they show Robinson taking days off but never stating that he was seeking an accommodation in doing so. Robinson's allegations are simply too conclusory to state a claim for discrimination based on a failure-to-accommodate theory.

Regarding Robinson's failure-to-engage-in-the-interactive-process claim, Robinson alleges that TCP "broke down engaging in the interactive process," and that TCP discussed another individual's disability with Pridestaff but did not discuss Robinson's. (ECF No. 24 at 7). As a result, Robinson alleges that TCP never engaged in the interactive process with him. Robinson again refers to his texts with Garcia as proof of this alleged breakdown in conversation, claiming that he "notified" TCP of his conversations with Garcia. (*Id.*). However, again, Robinson's allegation that TCP did not engage in the interactive process is entirely conclusory. Robinson does not allege or point to any texts showing that he ever requested an accommodation in the first place. And even if the Court were to determine that Robinson's text to Garcia requesting a day off to attend a doctor's appointment was an accommodation request, Robinson does not allege or point to any text showing how the interactive process proceeded or subsequently broke down. The Court thus grants TCP's motion to dismiss Robinson's failure-to-accommodate and failure-to-engage-in-the-interactive-process claims. Because these are not stand-alone claims, but are methods by which Robinson can support a disability discrimination claim, the Court dismisses them with prejudice and without leave to amend. Robinson may simply incorporate these allegations into a future disability discrimination claim if he chooses to amend his complaint.

### D. Bad faith.

The Court grants TCP's motion to dismiss Robinson's bad faith claim because Robinson does not allege that he had an employment contract with TCP. It is difficult to tell the basis for Robinson's bad faith claim from his complaint. Robinson alleges that TCP "keep[s] lying," manipulated timecards which Pridestaff ultimately used to contest Robinson's unemployment

claim, withheld documents, "failed to properly investigate [Robinson's] disability," deleted text messages, and "broke down in engaging in the interactive process." (ECF No. 24 at 6-7). In his response to TCP's motion to dismiss, Robinson clarifies that he is alleging a violation of the covenant of good faith and fair dealing in an employment contract. (ECF No. 27 at 3).

To allege a claim for breach of the covenant of good faith and fair dealing, a plaintiff must allege the following elements: (1) the plaintiff and defendant were parties to an agreement; (2) the defendant owed a duty of good faith to the plaintiff; (3) the defendant breached that duty by performing in a manner that was unfaithful to the purpose of the contract; and (4) the plaintiff's justified expectations were denied. *Branch Banking and Trust Company v. Westar Properties*, No. 2:15-cv-00, 2017 WL 1179942, at *4 (D. Nev. Mar. 29, 2017). Here, Robinson has not alleged the first element of a claim for breach of the covenant of good faith and fair dealing: that he and TCP entered into an employment contract. So, his claim fails. The Court thus grants TCP's motion to dismiss Robinson's bad faith claim. Because it is possible for Robinson to amend his complaint to allege a contractual relationship between him and TCP, the Court dismisses this claim without prejudice and with leave to amend.

### E. *Punitive damages.*

Punitive damages is not a legitimate basis for an independent cause of action. *Garcia v. Nevada Property 1, LLC*, No. 2:14-cv-1707-JCM-GWF, 2015 WL 67019, at *4 (D. Nev. Jan. 6, 2015). "Punitive damages are one remedy that the court may impose upon a finding of liability." *Id.* So, to the extent that Robinson brings a punitive damages claim as a separate cause of action, the Court dismisses it. This does not preclude Robinson from requesting punitive damages at a later date if he can assert a claim upon which relief can be granted.

### III. Robinson's motion to contend the joint employer doctrine.

Robinson moves the Court to consider TCP to be a "joint employer" under the Fair Labor Standards Act ("FLSA"). (ECF No. 30 at 1). TCP argues in response that the Court should deny Robinson's motion because he has not brought any FLSA claims. (ECF No. 31). The FLSA establishes minimum wage, overtime pay, recordkeeping, and youth employment standards. *See Wages and the Fair Labor Standards Act*, U.S. DEPARTMENT OF LABOR,

https://www.dol.gov/agencies/whd/flsa (last visited Nov. 26, 2024).  For the FLSA to apply to a given case of an employee suing his or her employer, the defendant must be the plaintiff's "employer" within the meaning of the FLSA.  *See Maddock v. KB Homes, Inc.*, 631 F.Supp.2d 1226, 1232 (C.D. Cal. Oct. 18, 2007).  Here, as TCP points out, Robinson does not bring any claims under the FLSA.  And the Court has dismissed Robinson's complaint.  The Court thus denies Robinson's motion to contend the joint employer doctrine as moot.

**IT IS THEREFORE ORDERED** that TCP's motion to dismiss (ECF No. 25) is **granted in part and denied in part.**  It is denied in part regarding TCP's request that the Court dismiss Robinson's complaint without leave to amend.  It is granted in all other respects.  Robinson's amended complaint (ECF No. 24) is dismissed without prejudice and with leave to amend as outlined in this order.  If Robinson chooses to amend his complaint, he must file his amended complaint on or before **December 30, 2024**.

**IT IS FURTHER ORDERED** that Robinson's motion to contend the joint employer doctrine (ECF No. 30) is **denied as moot.**

DATED: November 26, 2024

DANIEL J. ALBREGTS
UNITED STATES MAGISTRATE JUDGE